662 So.2d 677 (1995)
Billy Leon KEARSE, Appellant,
v.
STATE of Florida, Appellee.
No. 79037.
Supreme Court of Florida.
June 22, 1995.
Rehearing Denied November 9, 1995.
*680 Richard L. Jorandby, Public Defender and Jeffrey L. Anderson, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Sara D. Baggett, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Billy Leon Kearse. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons set forth below, we affirm Kearse's convictions, but vacate his death sentence and remand for a new penalty phase proceeding before a jury.
Kearse was charged with robbery with a firearm and first-degree murder in the death of Fort Pierce police officer Danny Parrish on January 18, 1991. After Parrish observed Kearse driving in the wrong direction on a one-way street, he called in the vehicle license number and stopped the vehicle. Kearse was unable to produce a driver's license, and instead gave Parrish several alias names that did not match any driver's license history. Parrish then ordered Kearse to exit the car and put his hands on top of the car. While Parrish was attempting to handcuff Kearse, a scuffle ensued, Kearse grabbed Parrish's weapon and fired fourteen shots. Thirteen of the shots struck Parrish, nine in his body and four in his bullet-proof vest. A taxi driver in the vicinity heard the shots, saw a dark blue vehicle occupied by a black male and female drive away from the scene, and called for assistance on the police officer's radio. Emergency personnel transported Parrish to the hospital where he died from the gunshot injuries.
The police issued a be-on-the-lookout (BOLO) for a black male driving a dark blue 1979 Monte Carlo. By checking the license plate that Officer Parrish had called in, the police determined that the car was registered to an address in Fort Pierce. Kearse was arrested at that address. After being informed of his rights and waiving them, Kearse confessed that he shot Parrish during a struggle that ensued after the traffic stop.
The jury convicted Kearse of both charged counts and recommended the death penalty by a vote of eleven to one. In sentencing Kearse to death, the judge found four aggravating circumstances: 1) the murder was committed while the defendant was engaged in a robbery; 2) the murder was committed to either avoid arrest or hinder the enforcement of laws; 3) the murder was especially heinous, atrocious, or cruel (HAC); and 4) the victim of the murder was a law enforcement officer engaged in the performance of his official duties. § 921.141(5)(d), (e), (g), (h), (j), Fla. Stat. (1991). The judge found two statutory mitigating circumstances: the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance; and the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. § 921.141(6)(b), (f), Fla. Stat. (1991). The judge also found three nonstatutory mitigating circumstances: the defendant's impoverished and culturally deprived background; the defendant was severely emotionally disturbed as a child; and the defendant's IQ is just above the retarded line. However, the judge determined that none of the mitigating circumstances "are substantial or sufficient to outweigh any aggravating circumstance."
On appeal, Kearse raises the following issues: 1) the denial of the requested limiting instruction on the consideration of duplicate *681 aggravating circumstances; 2) the aggravating circumstances of murder of a law enforcement officer and avoid arrest or hinder enforcement of laws constituted improper doubling; 3) the court's failure to find Kearse's age to be a mitigating factor; 4) the consideration of the aggravating circumstance of committed while engaged in the commission of a robbery; 5) finding that the murder was HAC; 6) the denial of the requested instruction on the cold, calculated, and premeditated (CCP) aggravating circumstance; 7) the prosecutor engaged in misconduct during the penalty phase; 8) the aggravating circumstance of committed while engaged in the commission of a robbery was based on the same aspect of the offense as the other aggravating circumstances; 9) the death penalty is not proportional; 10) the admission of evidence regarding Kearse's emotional state during the penalty phase; 11) the giving of the State's special requested instruction on premeditated murder over defense objection; 12) instructing the jury on escape as the underlying felony of felony murder; 13) the denial of defense challenges for cause of prospective jurors; 14) the admission of testimony regarding the purpose of a two-handed grip on a gun; 15) the denial of defense motions to suppress evidence on the basis that Kearse's warrantless arrest was not based on probable cause; 16) the instruction on reasonable doubt denied Kearse due process and a fair trial; 17) the admission of hearsay evidence during the guilt phase; 18) the introduction of evidence in the penalty phase that Kearse had been previously convicted of robbery; 19) the admission of Kearse's alleged disciplinary record during the penalty phase; 20) the constitutionality of the felony murder aggravating circumstance; 21) the denial of the requested instruction regarding the weight to be afforded the jury's recommended sentence; 22) the denial of the requested instruction regarding mitigating circumstances; 23) the denial of the requested instruction regarding the burden of proof in the penalty phase; 24) the constitutionality of Florida's death penalty statute; and 25) the constitutionality of the aggravating circumstances found in this case.

Guilt Phase
Issues 11-17, which relate to the guilt phase proceedings, are without merit. Kearse claims that the standard instruction on reasonable doubt which was given in this case is constitutionally infirm (issue 16). This issue was not properly preserved as counsel raised no objection below. However, even if preserved, we would find no merit to this claim as this Court has previously considered and rejected similar constitutional challenges directed at the reasonable doubt instruction. See Esty v. State, 642 So.2d 1074, 1080 (Fla. 1994); accord Brown v. State, 565 So.2d 304, 307 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990), abrogated on other grounds, Jackson v. State, 648 So.2d 85 (Fla. 1994).
In issue 11, Kearse argues that the trial court erred in reading a special instruction on premeditation. The following language was added to the standard instruction on premeditation:
Among the ways that premeditation may be inferred is from evidence as to the nature of the weapon used, the manner in which the murder was committed and the nature and manner of the wounds inflicted.
Kearse contends that this instruction improperly highlighted the State's evidence through the court's voice, permitted the jury to infer premeditation based on insufficient evidence, and constituted an improper comment on the evidence because the court called the killing a "murder." The State argues that these were not the grounds on which Kearse objected to the special instruction below, and thus he is precluded from raising them for the first time on appeal. Our review of the record reveals that defense counsel objected that the special instruction "doesn't accurately state the law" and "limits the jury to what they may look at in inferring the existence of premeditation." These objections and the discussion that followed can be fairly interpreted to cover the first two legal grounds raised in this appeal. Thus, these contentions have been preserved for our review.
As this Court explained in State v. Bryan, 287 So.2d 73, 75 (Fla. 1973), cert. denied, 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d *682 216 (1974), the standard jury instructions should be used to the extent applicable in the judgment of the trial court. However, the trial judge still has the responsibility to "`properly and correctly ... charge the jury in each case,'" id. (quoting In re Standard Jury Instructions in Criminal Cases, 240 So.2d 472, 473 (Fla. 1970)), and the judge's decision regarding the charge to the jury "has historically had the presumption of correctness on appeal." Id.
In the instant case, the judge instructed the jury that premeditation could be inferred from such evidence as the nature of the weapon used, the manner in which the murder was committed, and the nature and manner of the wounds inflicted. The State sought this more detailed definition of premeditation as this element of the offense was the foremost issue in dispute. Although the added language is not part of the standard jury instruction, it is an accurate statement of the law regarding premeditation. See Sireci v. State, 399 So.2d 964, 967 (Fla. 1981) ("Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted."), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Thus, the trial court did not err by giving this expanded instruction on premeditation.
We do agree with Kearse that the trial court erred by referring to the homicide as a "murder" in the expanded instruction. However, Kearse did not object to the special instruction on this ground and thus did not preserve this issue for appeal. See Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below."). Moreover, even if properly preserved, the error would be harmless beyond a reasonable doubt when viewed in the context of the entire instruction given and the evidence of premeditation presented. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Kearse also contends that the court erred in instructing the jury on escape as the underlying felony of felony murder (issue 12). Kearse objected to the escape instruction on two grounds: that he had insufficient notice that the State would rely upon escape as the underlying felony because it did not allege escape in the indictment; and that the elements of escape were not proven during the trial. We find no error on either point.
The State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder. O'Callaghan v. State, 429 So.2d 691, 695 (Fla. 1983); Knight v. State, 338 So.2d 201, 204 (Fla. 1976). In O'Callaghan, we concluded that the defendant was not prejudiced by the lack of a felony murder charge in his indictment or by the instructions given to the jury on the crime as charged in the indictment. 429 So.2d at 695. Because the State has no obligation to charge felony murder in the indictment, it similarly has no obligation to give notice of the underlying felonies that it will rely upon to prove felony murder. As we explained in O'Callaghan, "because of our reciprocal discovery rules, [a defendant has] full knowledge of both the charges and the evidence that the state [will] submit at trial." Id. Moreover, the underlying felonies that the State can rely upon to prove felony murder are limited by statute. See § 782.04(1)(a)2, Fla. Stat. (1991). Thus, a defendant also has statutory notice of the possible underlying felonies, including escape. See § 782.04(1)(a)2.g.
Kearse further argues that the instruction should not have been given because the elements of escape were not proven independent of his confession. Specifically, Kearse argues that the element of arrest was not proven. See Kyser v. State, 533 So.2d 285, 287 (Fla. 1988) ("For there to be an escape, there must first be a valid arrest.").
An arrest is legally made when there is a purpose or intention to effect an arrest, an actual or constructive seizure or detention is made by a person having present power to control the person arrested, and *683 such purpose or intention is communicated by the arresting officer to, and understood by, the person whose arrest is sought. State v. Parnell, 221 So.2d 129, 131 (Fla. 1969); Melton v. State, 75 So.2d 291, 294 (Fla. 1954). Kearse argues that, absent his confession, there was no evidence presented that Officer Parrish communicated that Kearse was under arrest. See Ruiz v. State, 388 So.2d 610, 611 (Fla. 3d DCA 1980) ("[W]hen a confession is relied upon to satisfy the state's burden of proof to establish the defendant's guilt, there must be either direct or circumstantial evidence  apart from the confession  of the so-called corpus delicti of the offense with which he is charged."), review denied, 392 So.2d 1380 (Fla. 1981). We do not agree with Kearse's argument. Rhonda Pendleton, Kearse's companion in the car at the time of the stop, testified that Officer Parrish told Kearse that he would "haul his ass in" if Kearse did not tell him his correct name or admit that his license had been suspended. When Kearse was not forthcoming, Parrish asked him to get out of the car and to put his hands on top of the car. Parrish's handcuffs were found on the ground at the scene. Pendleton also testified that Kearse explained that he shot Parrish "because his probation was suspended and the police was [sic] looking for him already." These facts constitute competent, substantial evidence of the arrest element of escape independent of Kearse's confession. Thus, the court did not err by giving the escape instruction. Moreover, had the court erred in giving this instruction, the error would be harmless beyond a reasonable doubt in light of the evidence establishing premeditated murder and felony murder based on the underlying felony of robbery. DiGuilio.
In issue 13, Kearse contends that the court improperly denied his challenges for cause of five prospective jurors, thereby forcing him to peremptorily strike the objectionable jurors. In order to preserve this issue for appellate review, a defendant must exhaust all peremptory challenges and seek an additional challenge which is denied. Hill v. State, 477 So.2d 553, 556 (Fla. 1985); accord Trotter v. State, 576 So.2d 691, 693 (Fla. 1990). As explained in Trotter, the defendant "initially must identify a specific juror whom he otherwise would have struck peremptorily. This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted." 576 So.2d at 693 (footnotes omitted).
Defense counsel initially removed four of the challenged jurors with peremptory challenges. After exhausting all peremptory challenges, counsel requested an unspecified number of additional challenges to strike jurors "that were challenged for cause which were improperly denied." When asked to identify the objectionable jurors, defense counsel named only prospective juror Shawl. The court subsequently granted each side an additional peremptory challenge, and the defense exercised this challenge to strike Shawl. The defense identified no other jurors that it would have stricken if given the opportunity. Thus, Kearse has failed to establish this claim. See Trotter, 576 So.2d at 693.
Kearse also argues that the State received an unwarranted advantage when the court granted each side an extra peremptory challenge. He contends that he alone was disadvantaged by the denial of challenges for cause, yet the State received the benefit of an extra challenge. We agree with the State that this issue has not been preserved for review as Kearse raised no such objection below. However, even if properly preserved, we find no merit to this argument. Florida Rule of Criminal Procedure 3.350(e) provides that "[t]he trial judge may exercise discretion to allow additional peremptory challenges when appropriate." We find no abuse of discretion in granting an additional peremptory challenge to the State in this case.
The next issue involves the court's admission of testimony regarding the purpose for a two-handed gun grip (issue 14). During direct examination by the State, a police officer recounted Kearse's account of the shooting, including the fact that Kearse fired the initial shot with one hand but switched to a two-handed grip before firing *684 the remaining shots. Defense counsel objected when the officer was asked what purpose a two-handed grip served. The court overruled the objection and the witness responded, "Better control, better accuracy." Kearse argues that the court erred in admitting this testimony as it was not probative of Kearse's mindset at the time of the shooting.
A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). We do not find that the court abused its discretion in admitting this testimony which was relevant to the issue of premeditation.
Kearse argues that the trial court erred in denying his motion to suppress certain physical evidence and his post-arrest confession (issue 15). Kearse contends that the evidence was the fruit of an illegal arrest because his warrantless arrest was not based on probable cause. "The probable cause standard for a law enforcement officer to make a legal arrest is whether the officer has reasonable grounds to believe the person has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction." Blanco, 452 So.2d at 523.
The record reveals the following facts regarding Kearse's arrest. The police had issued a BOLO for a black male driving a dark blue 1979 Monte Carlo. This man was suspected of shooting Parrish and was believed to be in possession of the officer's missing gun. By checking the license plate, the police determined that the car was registered to the address in Fort Pierce where Kearse was arrested. The police also knew that the shooter had told Parrish that his name was Dwight D. Fuller or Phillips.[1] When police officers arrived at the Fort Pierce address, a person leaving the residence told the officers that he just had talked to someone named Derrick or Dwight inside the house. The officers also spotted a Monte Carlo matching the BOLO vehicle in the backyard. Two black men were exiting the front door when the arresting officers approached the house. One of the men returned to the house when he saw the officers. When the officers asked the remaining man where Dwight was, the man replied that he was Derrick and that "the guy you want just went in the house" and offered to get him. The officers remained at the open front door until Kearse appeared. They then arrested him inside the house.
Based upon these facts, we agree with the trial court's determination that the authorities had probable cause to arrest Kearse. Therefore, the physical evidence seized after the arrest and Kearse's later confession, made after receiving and waiving his Miranda[2] rights, did not require suppression.
As his final guilt phase issue, Kearse contends that the trial court erred in admitting three hearsay statements into evidence over his objections (issue 17). The evidence at issue includes the testimony of Detective James Tedder that Parrish radioed to dispatch for a driver's license check on several names that Kearse had given to Parrish, the audio tape of the transmissions between Parrish and dispatch, and Tedder's testimony regarding where Parrish was found at the scene.
We find no error in the admission of Tedder's testimony regarding the transmissions to dispatch or the tape of those transmissions. This State did not offer this evidence to prove the truth of the matter asserted, but rather to establish the sequence of events and to explain why the police investigation focused on Kearse as the perpetrator. See Crump v. State, 622 So.2d 963, 969 (Fla. 1993). Moreover, if the court did err in admitting any of this evidence, the error would be harmless beyond a reasonable doubt. DiGuilio. The same information regarding Kearse's use of an alias was admitted *685 without defense objection through the testimony of Pendleton and the State exhibits of Parrish's ticket book and notepad and a printout of the BOLO.
However, we do agree with Kearse that the court erred in overruling his objection to Tedder's testimony regarding Parrish's location at the scene. Because Parrish had been removed by emergency personnel before Tedder arrived at the scene, Tedder had no firsthand knowledge about Parrish's location and was merely recounting what other officers had told him. However, the error in admitting this testimony was harmless beyond a reasonable doubt, DiGuilio, as others present at the scene testified about Parrish's location without defense objection.
After reviewing the record, we find that Kearse's conviction is supported by competent, substantial evidence. Therefore, we affirm Kearse's convictions for first-degree murder and robbery with a firearm.

Penalty Phase
While most of Kearse's penalty phase issues are without merit,[3] we find that several constituted error that requires a new sentencing proceeding before a jury. The errors relate to the penalty phase instructions and the improper doubling of aggravating circumstances.
Kearse argues that several of the aggravating circumstances in this case are duplicative and that the trial judge erred in refusing to give the limiting instruction he requested regarding duplicative aggravating circumstances. Specifically, Kearse contends that the aggravating circumstances of "avoid arrest/hinder enforcement of laws"[4] and "murder of law enforcement officer engaged in the performance of official duties" are duplicative because they are based on the same aspect of the crime; namely that the law enforcement officer was killed to avoid arrest and prevent enforcement of the law. Likewise, Kearse argues that the aggravating circumstance of "committed while engaged in the commission of a robbery" was improperly considered as it was based on the same aspect of the offense as the other aggravating circumstances.
The "commission during a robbery" aggravating circumstance was properly found in this case and did not constitute doubling. This was not a situation where the taking of the officer's weapon was only incidental to the killing. See Jones v. State, 580 So.2d 143, 146 (Fla.), cert. denied, 502 U.S. 878, 112 S.Ct. 221, 116 L.Ed.2d 179 (1991). Kearse forcibly took Officer Parrish's service pistol, then turned that weapon on the officer and killed him. Even though Kearse may have been motivated by his desire to avoid arrest when he took the gun, the incident still constituted a robbery because it involved "the taking of ... property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (1991); see also Grossman v. State, 525 So.2d 833 (Fla. 1988) (evidence that defendant wrestled officer's weapon away and fired fatal shot into officer's head supported felony murder instruction based on robbery), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Under section 812.13, the force, violence, or intimidation may occur prior to, contemporaneous with, or subsequent to the taking of the property so long as both the act of force, violence, or intimidation and the taking constitute a continuous series of acts or events. See Jones v. State, 652 So.2d 346, 349 (Fla. 1995).
However, we agree with Kearse that the aggravating factors of "avoid arrest/hinder enforcement of laws" and "murder of a law enforcement officer" are duplicative because both factors are based on a single aspect of the offense, that the victim was a *686 law enforcement officer.[5]Armstrong v. State, 642 So.2d 730, 738 (Fla. 1994).
The denial of Kearse's requested instruction on the CCP aggravating circumstance (issue 6) also constituted error in this case. Claims that the CCP instruction is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal. James v. State, 615 So.2d 668, 669 & n. 3 (Fla. 1993). In the instant case, defense counsel objected to the form of the CCP instruction at trial, requested an expanded instruction that essentially mirrored this Court's case law explanations of the terms, and raised the constitutionality of the instruction in this appeal as well. Thus, the issue has been properly preserved for review.
Subsequent to Kearse's trial, this Court determined that the standard CCP instruction, which was given in this case, is unconstitutionally vague. Jackson v. State, 648 So.2d 85, 90 (Fla. 1994). Just as in Jackson, we cannot fault the trial judge for giving the standard CCP instruction in this case.
The State contends that any error in failing to give the requested instruction to the jury would necessarily be harmless because the trial court did not find CCP after its independent examination of the evidence. We do not agree. The fact that the court correctly determined that the murder was not CCP does not change the fact that the jury instruction was unconstitutionally vague. As the United States Supreme Court noted in Espinosa v. Florida, 505 U.S. 1079, ___, 112 S.Ct. 2926, 2929, 120 L.Ed.2d 854 (1992), "if a weighing State decides to place capital-sentencing authority in two actors rather than one, neither actor must be permitted to weigh invalid aggravating circumstances." While a jury is likely to disregard an aggravating factor upon which it has been properly instructed but which is unsupported by the evidence, the jury is "unlikely to disregard a theory flawed in law." Sochor v. Florida, 504 U.S. 527, 538, 112 S.Ct. 2114, 2122, 119 L.Ed.2d 326 (1992); Jackson, 648 So.2d at 90.
We also agree with Kearse that the heinous, atrocious, or cruel aggravating circumstance was improperly applied in this case (issue 5). A murder may fit this description if it exhibits a desire to inflict a high degree of pain, or an utter indifference to or enjoyment of the suffering of another. Cheshire v. State, 568 So.2d 908, 912 (Fla. 1990). However, "a murder by shooting, when it is ordinary in the sense that it is not set apart from the norm of premeditated murders, is as a matter of law not heinous, atrocious, or cruel." Lewis v. State, 398 So.2d 432, 438 (Fla. 1981); see also McKinney v. State, 579 So.2d 80 (Fla. 1991) (HAC not shown where semiconscious victim suffered seven gunshot wounds on right side of body and two acute lacerations on head). While the victim in this case sustained extensive injuries from the numerous gunshot wounds, there is no evidence that Kearse "intended to cause the victim unnecessary and prolonged suffering." Bonifay v. State, 626 So.2d 1310, 1313 (Fla. 1993). The medical examiner could not offer any information about the sequence of the wounds and stated both that the victim could have remained conscious for a short time or rapidly gone into shock. In fact, the taxi driver who arrived at the scene as the shooter sped away could not get a response from the victim and described him as "dead or dying." Thus, we cannot find beyond a reasonable doubt that this murder was heinous, atrocious, or cruel.
In light of all of the penalty phase errors discussed above, we cannot say beyond a reasonable doubt that the errors were harmless. Accordingly, we vacate Kearse's death sentence and remand to the trial court with directions to empanel a new jury, to hold a new sentencing proceeding, and to resentence Kearse.
It is so ordered.
*687 GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, Senior Justice, concurs in part and dissents in part with an opinion.
McDONALD, Senior Justice, concurring in part, dissenting in part.
I concur that the conviction of Billy Leon Kearse was proper and should be affirmed. I would also affirm his sentence of death and disagree that a new sentencing proceeding is necessary. The improper penalty instruction on cold, calculated, and premeditated was harmless error. If there was any doubling of aggravating circumstances, it was clearly harmless. I am firmly convinced that the elimination of the aggravating factors found by the majority to be error would not affect the jury's recommendation of death or the judge's imposition of the death penalty. Killing a police officer in the line of duty in the manner in which Kearse did has caused him to earn a death sentence.
I disagree with the majority that it was improper to find both the avoiding arrest and killing a police officer as separate aggravating factors. One may kill to avoid arrest without the victim being a police officer; one may kill a police officer without doing so to avoid arrest. The legislature added the aggravating factor of killing a police officer after the avoiding arrest factor had already existed which leads me to conclude that this factor was to be treated as an additional aggravating factor. None of this really matters, however. We have found that the decision to impose the death penalty does not depend on counting the number of aggravating and mitigating circumstances. The sentencing judge and the reviewing court look at what transpired, the circumstances surrounding it, and the history and characteristics of the defendant to determine the appropriateness of the ultimate penalty of death. This case justifies that penalty.
NOTES
[1] At trial, the evidence revealed that the suspect had actually given a first name of "Duane" to Officer Parrish. However, at the time of Kearse's arrest, the officers had been informed that the suspect had given the first name of "Dwight."
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] We find no merit to issues 3, 10, and 18-25. Issues 7 and 9 are rendered moot by our determination that a new sentencing proceeding is required in this case.
[4] Although the jury was instructed on each of these aggravating circumstances, the trial court determined that the facts that would apply to the two circumstances were "interlocking, interwoven, with many of the same facts certainly applicable to one or both of these circumstances." Accordingly, the court merged these two aggravating circumstances into one in its sentencing order.
[5] Because these aggravating circumstances were duplicative, Kearse also argues that the trial judge erred in refusing to give his requested limiting instruction. While this Court has held that a requested instruction on "doubled" aggravating factors may be given, if applicable, see Castro v. State, 597 So.2d 259, 261 (Fla. 1992), we need not reach this issue in light of our determination that the doubling constituted error and that a new sentencing proceeding is required in this case.