681 So.2d 1112 (1996)
Merrit Alonso SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 83612.
Supreme Court of Florida.
July 18, 1996.
Rehearing Denied October 24, 1996.
*1113 Bennett H. Brummer, Public Defender and Christina A. Spaulding, Assistant Public Defender, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the convictions of armed robbery and first-degree murder and the sentence of death imposed on Merrit Alonso Sims. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Charles Stafford, a Miami Springs police officer, followed Sims as he drove onto state road 112 on June 11, 1991. Premised upon his belief that Sims was driving a stolen car, Officer Stafford, in full uniform and driving a clearly marked police car, signaled to Sims to pull over on the exit ramp. It was subsequently discovered that Sims had borrowed the car from his cousin, Sam Mustipher, but when Sims failed to return the car as promised, Mustipher reported it stolen.
As Officer Stafford was handcuffing him, Sims struck the officer in the head with his police radio, robbed him of his police pistol, and shot him twice. Sims admitted shooting Officer Stafford, who subsequently died from his wounds, but asserted from the outset that he had done so in self-defense after Officer Stafford had choked him, used racial epithets, and repeatedly threatened to kill him. After the shooting, Sims drove to a park and threw the gun into a river. He spent the night in his car, changed his clothes in the morning, and found a friend to cut the handcuff off his arm. Four days later, Sims arrived by bus in California searching for his former girlfriend and their two children. He testified that he intended to surrender to police the next day, but panicked and tried to escape when the police arrived. Sims confessed to the crime and waived extradition.
Sims was convicted of first-degree murder and armed robbery. The court found six aggravating circumstances,[1] no statutory mitigating circumstances, and attributed little or no weight to the nonstatutory mitigating circumstances presented by the defense. Sims was sentenced to death for the murder of Officer Stafford and a term of seventy-five years imprisonment for the armed robbery. He raises eleven issues on appeal.[2]
*1114 First, we address Sims' contention that the court failed to conduct an adequate Richardson[3] hearing when the state surprised the defense by calling Sims' parole officer, Essie Lynn, as a witness. When the state calls an unlisted witness, and the defendant asserts a violation of the discovery rule, Florida Rule of Criminal Procedure 3.220(b), as in the instant case, the trial court must conduct a Richardson hearing. See Richardson, 246 So.2d at 775. We reiterate the Richardson requirement as stated in our decision in State v. Hall, 509 So.2d 1093 (Fla. 1987):

Richardson states that although the trial court has discretion in determining whether the state's noncompliance with the discovery rules resulted in harm or prejudice to the defendant, such discretion could be exercised only after the court made an adequate inquiry into all of the surrounding circumstances. At a minimum the scope of this inquiry should cover such questions as whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and, most importantly, whether the violation affected the defendant's ability to prepare for trial.
Id. at 1096.
The trial court properly recognized that a Richardson hearing was required and inquired as to the prosecutor's reasons for the omission and the nature of the testimony to be adduced:
THE COURT: Tell me why her name isn't on the list first.
MR. ROSENBERG [prosecutor]: I can't find it in my discovery, but she is listed as 127 in my discovery for the trial packet, which is prepared from the additional discovery list gone out. But I can't find it.
. . . .
I get a list prior to trial, witness list of every witness, through the computer, of discovery that's listed in the office. Witness 127 is Essie Lynn on my sheet. I have looked through my discovery and I don't see her name, but it's so long that somethingthat I don't have my additional discovery or I fail to list her name or I gave it to my secretary to put it on the additional discovery sheet and it was not handed out.
THE COURT: What would she testify to?
MR. ROSENBERG: The defense, months ago, listed a witness by the name of Linda Vestman (phonetic), who is a probation officer with Essie Lynn. I took Linda Vestman's deposition. She told both myself and Mr. Carter [defense counsel] that it's not her that was the control officer for the defendant, it's Essie Lynn.
THE COURT: Okay.
MR. ROSENBERG: Along with that, Mr. Carter and Mr. Pitts were provided in discovery all the community controlI should say all the controlled release papers signed by Ms. Lynn and the defendant. So apparently it was inadvertence by me not putting her name on additional discovery, but both counsel have known for months about Ms. Lynn. In fact, Ms. Lynn was the control officer who did the arrest warrant for the defendant when he was in California. So as far as the Richardson hearing goes, it is clear that I provided all discovery with her name and it's clear that inadvertently I failed to place her name [on the witness list].
MS. LEHNER [prosecutor]: The defense has also been aware since sometime last week that the state will be establishing in this case that the defendant was a parolee. *1115 In fact, that's in the third paragraph of the state's motion in limine.[4]
. . . .
MR. ROSENBERG: Ms. Lynn has a form which the defendant signed upon his release indicating that if you either possess, use or have narcotics, you're in violation of your controlled release from state prison.
. . . .
[T]he State is entitled to prove motive on premeditated murder. That's our theory. I am entitled to show the reason, and I am going to argue the reason why he killed Officer Stafford. Forget the stolen car. He knew it wasn't stolen. That's not the reason. He killed Charlie Stafford because Charles Stafford was going to find that he is using his cousin's car to transport drugs and he is going to go back to state prison for it.
Sims claims that he was prejudiced by the surprise witness, and had he known the state's theory of the case, he would have demanded a separate hearing to determine the admissibility of the dog-alert testimony.[5] The court found that the omission of Lynn's name from the witness list was inadvertent and that Sims was not procedurally prejudiced. We conclude that the trial court's inquiry complied with the minimum requirements set forth in Richardson and in light of the evidence adduced at the Richardson hearing, we find that the violation neither surprised nor prejudiced Sims.
Sims argues that the trial court erred in admitting Lynn's testimony to prove that he violated parole without clear and convincing evidence of his drug possession. We reject this argument. Lynn's testimony was not offered as collateral crime evidence under section 90.404(2), Florida Statutes (1993),[6] as Sims asserts. The state offered Lynn's testimony to establish Sims' parole status and the fact that he knew illegal drug possession was a parole violation. Sims neither objected to the admissibility of the testimony regarding the dog-alert nor did he seek to strike that testimony when it became apparent that the trial court was going to permit the state to use Lynn's testimony to prove that Sims was on parole and that he knew drug possession was a parole violation. While parole status evidence is not independently admissible during the guilt phase of a capital trial, it became relevant and admissible when it was linked to a motive for murdering the police officer. Grossman v. State, 525 So.2d 833, 837 (Fla.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); Mackiewicz v. State, 114 So.2d 684 (Fla.1959), cert. denied, 362 U.S. 965, 80 S.Ct. 883, 4 L.Ed.2d 879 (1960). In the instant case, because the jury could have concluded from the dog-alert evidence that Sims possessed drugs and was fearful of parole violation, Lynn's testimony was relevant and admissible to establish motive.
Sims also claims that the trial court erred in refusing to allow defense counsel to elicit testimony that Sims was arrested a week before the shooting and was cooperative with police. Defense counsel wanted to establish that the prior arrest was without incident by eliciting that Sims had not been charged with resisting or escape. During that encounter, Sims was arrested by two officers for driving without a valid license; he was quickly handcuffed and there was no evidence that he possessed drugs. The state objected to the testimony, asserting that it had obtained an order in limine preventing Sims from presenting any evidence pertaining to the prior incident on the grounds that it was factually dissimilar and therefore irrelevant. The trial judge acceded that the line of questioning was precluded by the court's order in limine *1116 and sustained the objection. The dissimilarity between the two incidents precludes comparison; thus we find no error.
Sims asserts next that in posing a hypothetical to the medical examiner, the prosecutor misrepresented Sims' testimony by inaccurately demonstrating the position of his arm while holding the gun. Sims argues that based on the prosecutor's demonstration, the medical examiner concluded that Sims' testimony was inconsistent with the angle of the gunshot wounds. We find this point to be without merit. Sims had already demonstrated the positions of the parties during his cross-examination and the defense had ample opportunity to cross-examine the medical examiner based on its own version of the facts. Although Sims raises a similar claim with regard to the state's examination of the firearms technician, we will not consider it because it was not raised below and thus not preserved for appellate review.
As his third issue, Sims maintains that the state failed to disprove his theory of self-defense and to establish the intent element required for robbery or escape, the felonies alleged as predicates for the state's felony murder theory. We find no error on either point. According to the firearms expert and the medical examiner, the physical evidence is inconsistent with Sims' account of events. The medical examiner stated that the downward path of the bullets and the stippling reflected that the gun would have to have been held at a downward angle from a height above Stafford's upper chest and neck at a distance of six to eighteen inches. Given that Stafford was five inches taller than Sims, the medical examiner concluded that the evidence was inconsistent with Sims' testimony that Stafford was lunging at him from five feet away when he shot him. Likewise, the firearms technician stated that the location of the casings, found to the left of the position at which Sims placed himself, was inconsistent with the fact that casings from the murder weapon eject to the right of the shooter.
Sims' account was further refuted by other witnesses including the cab driver and both of Sims' cousins, Sam and Carol Mustipher. We find that Sims' theory of self-defense was sufficiently discredited by the various witnesses and Sims' own actions after the shooting, i.e., fleeing, disposing of the murder weapon and clothes, all of which evince a consciousness of guilt.
According to Sims, he acted in self-defense, and he did not possess the requisite intent for robbery or escape. However, the claim of self-defense was amply repudiated, and in Kearse v. State, 662 So.2d 677 (Fla. 1995), on facts similar to those in the instant case, this Court explained that the murder was committed during a robbery:
This was not a situation where the taking of the officer's weapon was only incidental to the killing. Kearse forcibly took Officer Parrish's service pistol, then turned that weapon on the officer and killed him. Even though Kearse may have been motivated by his desire to avoid arrest when he took the gun, the incident still constituted a robbery because it involved "the taking of ... property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." Under section 812.13, the force, violence, or intimidation may occur prior to, contemporaneous with, or subsequent to the taking of the property so long as both the act of force, violence, or intimidation and the taking constitute a continuous series of acts or events.
Id. at 685 (citations omitted).
In the instant case, we find that the intent element was sufficiently established. The jury could have found that Sims, through the use of unjustified force, took the weapon from Stafford for the purpose of escape or robbery insofar as Sims did not leave the gun at the scene of the crime.
As his next issue, Sims asserts that the prosecutor's comments during closing argument were improper. He claims that the prosecutor called him a liar, accused defense counsel of misleading the jury, and bolstered his attacks on Sims' credibility by expressing his personal views and knowledge of extra-record matters. Because defense counsel failed to object contemporaneously to any of the comments at issue, they are not properly *1117 before this Court on appeal and will not be considered. See Craig v. State, 510 So.2d 857, 864 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).
Sims next contends that the trial court erred by excusing venireperson Hightower for cause. During the course of voir dire, Hightower revealed that she was acquainted with defense counsel and that she had worked with one of Sims' sisters. The prosecutor questioned whether Hightower's knowledge of a family member would affect her ability to vote for the death penalty:
MR. ROSENBERG [prosecutor]: If I prove to you the defendant committed first degree murder, are you going to be able to sit in a death-penalty phase knowing that you know a family member? And if I prove the aggravating circumstances outweigh the mitigating, would you be able to vote for the death of this defendant?
MS. HIGHTOWER: I am not sure.
MR. ROSENBERG: I have nothing else.
THE COURT: Mr. Pitts.
MR. PITTS [defense counsel]: I have no questions.
The prosecutor then challenged Hightower for cause.
In Hannon v. State, 638 So.2d 39 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1118, 130 L.Ed.2d 1081 (1995), we stated that "[t]he inability to be impartial about the death penalty is a valid reason to remove a prospective juror for cause.... To prevail on this issue, a defendant must show that the trial court, in excusing the prospective juror for cause, abused its discretion." Id. at 41 (citations omitted). In Hannon, we said the trial court did not abuse its discretion in removing two prospective jurors for cause after they demonstrated that they were "clearly uncomfortable with the issue" of imposing the death penalty. Id. In the instant case, Hightower was clearly uncomfortable with the question of whether she could impose the death penalty in Sims' case. The trial court did not abuse its discretion and we find no error.
Sims next argues that the court should have considered and instructed the jury on his claim of imperfect self-defense as a mitigating circumstance. We disagree. The jury heard and rejected Sims' claim of self-defense during the guilt phase of the trial and the judge characterized this argument in the penalty phase as "lingering doubt." We have held that residual or lingering doubt of guilt is not an appropriate mitigating circumstance, Bogle v. State, 655 So.2d 1103, 1107 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 483, 133 L.Ed.2d 410 (1995); Downs v. State, 572 So.2d 895, 900 (Fla.1990), cert. denied, 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 72 (1991); Aldridge v. State, 503 So.2d 1257, 1259 (Fla.1987), and we find no merit to Sims' claim.
Sims next claims that the trial court erred in refusing to instruct the jury that at twenty-four, his age at the time of the crime was a statutory mitigating factor. We disagree. Whether a defendant's age constitutes a mitigating factor is a matter within the trial court's discretion, depending on the circumstances of each individual case. Scull v. State, 533 So.2d 1137, 1143 (Fla.1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). We find that the trial judge acted within his discretion when he rejected Sims' age as a factor, stating:
The defendant's age, education and maturity were apparent to the Court from the defendant's testimony. Cooper v. State, 492 So.2d 1059 (Fla.1986).
There was no evidence that Sims' mental, emotional, or intellectual age was lower than his chronological age, and without more, age twenty-four is not a mitigator, Garcia v. State, 492 So.2d 360, 367 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986); thus we find no error.
We likewise find that the court did not commit error by refusing to give a requested limiting instruction on the avoiding arrest aggravator.[7] Sims contends that the *1118 failure to give the requested instruction[8] unfairly skewed the weighing process in favor of death, because the avoiding arrest aggravator duplicates the aggravating circumstance of killing a law enforcement officer.[9] Sims claims that the proffered limiting instruction would have clarified the distinct meanings of the two aggravating circumstances and further ensured that they would not have been given individual weight unless separately established by independent evidence. This argument is without merit because while the two factors are facially distinct, Sims suffered no prejudice in that the trial judge gave an anti-doubling instruction and merged the two factors in his sentencing order, treating them as a single aggravator without attributing additional weight.
Sims next argues that the trial court erred in instructing the jury that the murder was committed during the course of a felony because it duplicates an element of the underlying offense and fails to narrow the class of defendants subject to the death penalty. § 921.141(5)(d), Fla. Stat. (1993). We have previously rejected challenges to this aggravating circumstance, Kearse v. State, 662 So.2d 677, 685 (Fla.1995); Parker v. State, 641 So.2d 369, 377 n. 12 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 944, 130 L.Ed.2d 888 (1995); Stewart v. State, 588 So.2d 972, 973 (Fla.1991), cert. denied, 503 U.S. 976, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992), and we find that Sims' claim is without merit.
In his next point on appeal, Sims asserts that the trial court's sentencing order fails to provide an adequate basis for review and demonstrates the unreliability of the court's decision to impose a sentence of death. Sims claims that the sentencing order suggests a lack of care for three reasons: the statutory mitigator specified in the judge's instructions to the jury is different from the statutory mitigator specified in the sentencing order; the judge found an additional aggravating circumstance for which the jury was not instructed; and the judge's conclusory evaluation of the twenty-five nonstatutory mitigators Sims presented does not comport with the guidelines this Court set forth in Campbell v. State, 571 So.2d 415, 419-20 (Fla.1990). We will address each reason in turn.
First, the trial judge instructed the jury on the "extreme duress" mitigator:
Among the mitigating circumstances you may consider, if established by the evidence, are that the defendant acted under extreme duress or under the substantial domination of another person. [§ 921.141(6)(e), Fla. Stat. (1993).] Any other aspect of the defendant's character or record, and any other circumstance of the offense.
(Emphasis added.) But in his sentencing order, the judge stated that the mitigating factor Sims alleged was the "extreme mental or emotional disturbance" mitigator, to wit: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." § 921.141(6)(b), Fla. Stat. (1993). Although a discrepancy exists between the jury instructions and the sentencing order, we find no reversible error. It is clear from the sentencing order that the judge properly addressed and rejected both mitigating circumstances.
Second, we find that the court did not commit error by finding an aggravating circumstance which was not alleged by the state and for which the jury received no instruction. The court found that: "The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws," § 921.141(5)(g), Fla. Stat. (1993), and merged that aggravator with the avoiding arrest aggravator, weighing both as a single factor. We have held that failure to instruct the jury on a particular aggravating circumstance does not work to an appellant's disadvantage, see Hoffman v. State, 474 So.2d 1178, 1182 (Fla.1985), and we find that Sims was not disadvantaged in the instant case.
*1119 Third, Sims argues that his case should be remanded for resentencing because the sentencing order does not comply with this Court's guidelines. In Campbell, we provided guidelines for addressing mitigating circumstances in sentencing orders:
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature.
. . . .
The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance. Although the relative weight given each mitigating factor is within the province of the sentencing court, a mitigating factor once found cannot be dismissed as having no weight.
571 So.2d at 419 (citations and footnotes omitted). We noted in Crump v. State, 654 So.2d 545 (Fla.1995), that "the trial court's failure to comply with Campbell `deprives this court of the opportunity for meaningful review.'" Id. at 547 (quoting Ferrell v. State, 653 So.2d 367, 371 (Fla.1995)).
We disagree with Sims' assertion that the sentencing order precludes adequate appellate review. The trial judge addressed the background mitigation supported by the evidence in a brief summary:
The defendant presented evidence that he had two children with a woman in California, that he had two children in Miami, that he attended church, that he was never expelled from school, that he felt remorse over the [sic] Officer Stafford's death but maintained he killed him in self defense.
Following this summary, the judge listed the twenty-five additional nonstatutory mitigating factors Sims presented and stated:
The Court has considered each of them carefully. The Court finds little to no weight to each of them. The Court finds that the aggravating circumstances in this case far outweigh the mitigating circumstances.
We are able to conduct an appropriate proportionality review in Sims' case because the order specifies which statutory and nonstatutory mitigating circumstances the trial judge found and the weight he attributed to these circumstances in determining whether to impose a death sentence. Based on our analysis, we find that the trial court's sentencing order complies with the requirements set forth in Campbell, and we find no error in the sentence imposed.
Finally, we reject Sims' constitutional challenge of Florida's capital sentencing statute. See, e.g., Pope v. State, 679 So.2d 710 (Fla. 1996). Accordingly, we affirm the convictions and sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Aggravating circumstances: (1) the murder was committed while the defendant was under sentence of imprisonment; (2) the defendant had a prior violent felony conviction; (3) the murder was committed in the course of another felony (armed robbery); (4) the murder was committed to avoid arrest; (5) the victim was a law enforcement officer; (6) the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or enforcement of laws.
[2] Whether the trial court erred by: (1) admitting the testimony of Sims' parole officer, then refusing to allow the defense to rebut that testimony; (2) allowing the prosecutor's misrepresentations of Sims' testimony during the state's rebuttal case; (3) allowing insufficient evidence to sustain Sims' convictions for robbery and felony murder; (4) allowing the prosecutor's improper closing argument; (5) excusing venireperson Hightower for cause; (6) refusing to consider evidence of imperfect self-defense as a mitigating circumstance; (7) refusing to instruct the jury that Sims' age at the time of the crime was a statutory mitigating circumstance; (8) refusing to give Sims' recommended limiting instruction on the avoiding arrest aggravator; (9) submitting the felony murder aggravator to the jury; (10) inadequately evaluating the aggravating and mitigating circumstances in the sentencing order; and (11) rejecting Sims' challenge to the constitutionality of Florida's capital sentencing statute.
[3] Richardson v. State, 246 So.2d 771 (Fla.1971) (effectuating the requirements of discovery rules requiring the prosecution to furnish a list of all witnesses whom the prosecutor knows to have relevant information concerning the charged offense or any defense thereto, upon the defense's written request).
[4] The motion in limine stated in pertinent part: "The State will establish that ... the defendant, a parolee, in possession of drugs, shot and killed Stafford and then escaped."
[5] Without objection from Sims, the state adduced evidence that a police dog alerted to the presence of drugs in the car.
[6] Section 90.404 states in pertinent part:

(2) OTHER CRIMES, WRONGS, OR ACTS. (a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[7] Avoiding arrest aggravator: "The capital felony was committed for the purpose of avoiding or preventing lawful arrest or effecting an escape from custody." § 921.141(5)(e), Fla. Stat. (1993).
[8] Sims' proffered instruction: "The mere fact of a death of a law enforcement officer is not sufficient to establish this factor without proof of the requisite intent to avoid arrest and detection."
[9] Killing a law enforcement officer aggravator: "The victim of the capital felony was a law enforcement officer engaged in the performance of his official duties." § 921.141(5)(j), Fla. Stat. (1993).