967 So.2d 148 (2007)
Merrit Alonzo SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-1879.
Supreme Court of Florida.
July 12, 2007.
Rehearing Denied October 11, 2007.
*150 P. Benjamin Duke of Covington and Burling, LLP, New York, New York, and Benjamin S. Waxman of Robbins, Tunkey, Ross, Amsel, Raben, Waxman, and Eiglarsh, P.A., Miami, Florida, for Appellant.
Bill McCollum, Attorney General, Tallahassee, Florida, Sandra S. Jaggard and Margarita I. Cimadevilla, Assistant Attorneys General, Miami, Florida, for Appellee.
PER CURIAM.
Merrit Alonzo Sims appeals the denial of his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we reverse the trial court's denial of relief and remand the case for a new trial.

I. FACTUAL AND PROCEDURAL BACKGROUND
The following facts were set forth by this Court in its Sims opinion on direct appeal:
Charles Stafford, a Miami Springs police officer, followed Sims as he drove onto state road 112 on June 11, 1991. Premised upon his belief that Sims was driving a stolen car, Officer Stafford, in full uniform and driving a clearly marked police car, signaled to Sims to pull over on the exit ramp. It was subsequently discovered that Sims had borrowed the car from his cousin, Sam Mustipher, but when Sims failed to return the car as promised, Mustipher reported it stolen.
As Officer Stafford was handcuffing him, Sims struck the officer in the head with his police radio, robbed him of his police pistol, and shot him twice. Sims admitted shooting Officer Stafford, who subsequently died from his wounds, but asserted from the outset that he had done so in self-defense after Officer Stafford had choked him, used racial epithets, and repeatedly threatened to kill him. After the shooting, Sims drove to a park and threw the gun into a river. He spent the night in his car, changed his clothes in the morning, and found a friend to cut the handcuff off his arm. Four days later, Sims arrived by bus in California searching for his former girlfriend and their two children. He testified that he intended to surrender to police the next day, but panicked and tried to escape when the police arrived. Sims confessed to the crime and waived extradition.
Sims v. State, 681 So.2d 1112, 1113 (Fla. 1996).
At trial, the State introduced the testimony of Detective Scott Silva, a police officer who worked in the Narcotics K-9 Unit at the Metro-Dade Police Department, and Sims' counsel did not object. Detective Silva testified that his dog alerted him to the presence of narcotics in the passenger side of the car that Sims was driving. No drugs were found in the car, and there was no evidence that Sims had ever used drugs or been involved in the sale of them.[1] Nonetheless, Silva testified *151 that the dog would alert to the scent of narcotics after the drugs had been removed, and the State used this to develop its theory of Sims' motive for killing Officer Stafford.[2]
After Silva testified, the State called Sims' parole officer, Essie Lynn, to testify that if Sims were found in possession of drugs, he would be in violation of his conditional release and be eligible to return to prison for up to two years. At a sidebar hearing, Sims' counsel vehemently objected to this testimony on the basis that Lynn was not on the State's witness list and that there was no "evidence that [Sims] possessed or used narcotics." During the sidebar hearing, the trial judge indicated that he thought there was "enough to go to the jury on the presence of drugs in that car." The following business day the court held a hearing regarding the admissibility of Lynn's testimony and overruled Sims' objection. Lynn subsequently testified, and Sims' counsel never moved to strike the canine-alert evidence that laid the predicate for Lynn's testimony. During closing argument, the prosecutor repeatedly suggested that Sims killed Officer Stafford because Sims knew he had drugs in the car, and he did not want to be found in violation of his conditional release.
The jury found Sims guilty of first-degree murder and armed robbery, and the jury recommended the death penalty by a vote of eight to four. See id. at 1113. The trial court sentenced Sims to death. Id.[3] On direct appeal, this Court affirmed Sims' convictions and sentence. Id. at 1119.[4]
*152 On June 28, 1999, Sims filed the instant amended postconviction motion,[5] which the trial court denied after holding an evidentiary hearing on three of the grounds Sims raised for relief. Then, on April 3, 2006, this Court issued an order temporarily relinquishing jurisdiction to the trial court to hold an evidentiary hearing on a fourth issue:
[W]hether defense counsel's performance was deficient for not challenging the canine-alert testimony presented by Officer Silva and/or for not moving to strike that testimony once defense counsel learned that the State was going to present the testimony of Sims' parole officer to show that, if Sims was in possession of drugs, he would be found in violation of his conditional release.
This Court's order also explained that the testimony in question was "clearly prejudicial" because "[i]t was essential to the State's argument that Sims' motive for shooting Officer Stafford was to avoid being found in violation of the terms of his conditional release and returned to prison."
After conducting an evidentiary hearing on July 24-27, 2006, the trial court issued an order concluding that counsel was not deficient. At the evidentiary hearing, Sims called Clinton Pitts, Sims' lead counsel for the guilt phase. Pitts testified that he knew the State intended to present a motive involving the possession of drugs based upon the canine-alert evidence. Pitts also stated that he did not have a strategic reason for failing to move to preclude the canine-alert evidence and that he could not recall a strategic reason for not objecting to the canine-alert testimony when Detective Silva was called. Pitts testified that upon reviewing the transcript he was surprised that no objections to Detective Silva's testimony were present. Pitts admitted that looking back on the face of the record, this failure to object was not proper and that he failed to meet professional standards of performance of counsel in a capital case. However, Pitts stated that he recalled that Judge Carney had already made a decision to allow Detective Silva to testify and that Judge Carney reacts strongly when attorneys do not heed his rulings. Further, Pitts testified that he did not have a strategic reason for not moving to strike the canine-alert testimony in connection with the defense's objection to Lynn's testimony. Generally speaking, though, Pitts stated that moving to strike testimony makes the jury focus upon that stricken testimony. Moreover, Pitts recalled that his overall strategy regarding the canine-alert testimony "was that that evidence had very little importance and I am going to be able to argue to the jury proficiently that the testimony was very weak."
Sims also called Arthur Carter, Sims' co-counsel for the guilt phase and lead counsel for the penalty phase. Carter testified that he thought Silva's testimony was irrelevant since no drugs were found in the car and the alert occurred two days after the car had been moved and left unattended. He did not recall whether or not the defense considered filing a motion to preclude the statement prior to trial, and he could not think of a strategic reason for not objecting when Detective Silva was called. Additionally, Carter testified that he did not have a strategic reason for failing to move to strike Silva's testimony, although he did not see the point once Judge Carney indicated that there was enough to go to the jury on the possession issue. Carter, however, admitted that he could have preserved the issue for appeal by moving to strike the canine-alert testimony *153 outside of the jury's presence even if he thought Judge Carney would deny the motion.

II. Issues Raised on Appeal
Sims argues that the trial court erred in finding Sims' counsel not deficient for failing to properly challenge the canine-alert evidence because the trial court ignored multiple admissions by defense counsel and applied the incorrect legal standard.[6] For the reasons explained below, this Court grants relief and remands the case for a new trial.
As we explained in Morris v. State, 931 So.2d 821, 828 (Fla.2006),
In order to establish a claim of ineffective assistance of counsel, a defendant must meet two requirements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong under Strickland, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688[, 104 S.Ct. 2052]. To establish the second prong under Strickland, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694[, 104 S.Ct. 2052]. When reviewing a trial court's ruling after an evidentiary hearing on an ineffective assistance claim, this Court gives deference to the trial court's factual findings to the extent they are supported by competent, substantial evidence, but reviews de novo the trial court's determinations of deficiency and prejudice, which are mixed questions of fact and law. See Arbelaez v. State, 898 So.2d 25, 32 (Fla.2005).
"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision *154 was reasonable under the norms of professional conduct." Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000).
Regarding the first prong under Strickland, the trial court concluded in its order that "the identified acts or omissions were not outside of the wide range of professional competent assistance." The trial court found that Pitts "believed any added attention [would] place emphasis where no emphasis was due" and that Pitts "was `brilliant' in his closing argument." However, we find that the trial court's conclusion that counsel was not deficient is not supported by competent, substantial evidence in the record.
After reviewing the record in this case, it is clear that the failure to properly challenge the canine-alert evidence did not represent a strategic choice. At the evidentiary hearing, neither of Sims' attorneys recalled any strategic reason for failing to preclude Detective Silva's testimony, for failing to object to Detective Silva's testimony, or for failing to move to strike Detective Silva's testimony in connection with the defense's objections to Lynn's testimony. Essentially, neither counsel had a strategic reason for failing to preserve the issue for appellate review. Indeed, Pitts testified that he was surprised when he realized that no objections to the canine-alert evidence were present in the record. He admitted that this failure to object to the canine-alert testimony was improper. Furthermore, Pitts admitted that he knew before trial that the State intended to use the testimony to develop motive, and Carter admitted that at the time he believed the canine-alert evidence was irrelevant. Sims did not own the vehicle, and no drugs were actually found in the car. Accordingly, we conclude the failure to properly challenge this canine-alert evidence in order to preserve the issue for appellate review "fell below an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
Regarding the second prong of Strickland, we conclude that the defense was prejudiced by counsel's deficient performance. As we stated in our order relinquishing jurisdiction for an evidentiary hearing, the canine-alert testimony was "clearly prejudicial" because "[i]t was essential to the State's argument that Sims' motive for shooting Officer Stafford was to avoid being found in violation of the terms of his conditional release and returned to prison." The State's case was based upon this motive theory. In its closing, the State repeatedly suggested that Sims killed Officer Stafford because Sims knew there were drugs in the car. Furthermore, this canine-alert evidence was the only evidence supporting the State's drug possession theory, which allowed for the admission of Lynn's testimony. See Sims, 681 So.2d at 1115 ("[B]ecause the jury could have concluded from the dog-alert evidence that Sims possessed drugs and was fearful of parole violation, Lynn's testimony was relevant and admissible to establish motive."). Given the facts of this case, our confidence in the outcome is undermined. Sims has established that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.

III. Conclusion
Having met his burden of establishing his trial counsel was ineffective for failing to properly challenge the canine-alert testimony of Detective Silva, Sims is entitled to the relief requested. We vacate Sims' convictions and sentence and remand for a new trial.
It is so ordered.
*155 LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Sims' parole officer, Essie Lynn, testified that Sims never failed the random drug tests that were one of the requirements for conditional release. The only witness who refuted this was Reverend Mervin Simmons, Sims' friend, whom defense counsel called to testify during the penalty phase. On direct examination, Sims' defense counsel, Arthur Carter, Jr., asked Simmons if Sims had ever used drugs in high school, and Simmons stated that he had.
[2] Before trial, Sims' counsel discussed the irrelevancy of Detective Silva's testimony during a hearing regarding the State's motion in limine, which sought to exclude evidence that, a few weeks prior to shooting Officer Stafford, Sims had been the subject of another traffic stop. The State's motion stated that "there was evidence that drugs were in the car" and that this evidence provided motive. During the hearing on the motion, the State mentioned "that there will be evidence that there were drugs in the vehicle that the defendant was driving." Sims' counsel responded, "That's not true. The testimony of the officer who had the dog come up said he didn't find any drugs." Sims' counsel, however, never actually objected to the admissibility of Detective Silva's testimony. And, when granting the State's motion in limine, the trial court specifically indicated that it had not considered in its ruling the issue of "what the facts will show with regard to the possession of drugs."
[3] The trial court found the following aggravating circumstances: "(1) the murder was committed while the defendant was under sentence of imprisonment; (2) the defendant had a prior violent felony conviction; (3) the murder was committed in the course of another felony (armed robbery); (4) the murder was committed to avoid arrest; (5) the victim was a law enforcement officer; (6) the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or enforcement of laws." Sims, 681 So.2d at 1113 n. 1.
[4] On direct appeal, we rejected claims that "the trial court erred by: (1) admitting the testimony of Sims' parole officer, then refusing to allow the defense to rebut that testimony; (2) allowing the prosecutor's misrepresentations of Sims' testimony during the state's rebuttal case; (3) allowing insufficient evidence to sustain Sims' convictions for robbery and felony murder; (4) allowing the prosecutor's improper closing argument; (5) excusing [a] venireperson . . . for cause; (6) refusing to consider evidence of imperfect self-defense as a mitigating circumstance; (7) refusing to instruct the jury that Sims' age at the time of the crime was a statutory mitigating circumstance; (8) refusing to give Sims' recommended limiting instruction on the avoiding arrest aggravator; (9) submitting the felony murder aggravator to the jury; (10) inadequately evaluating the aggravating and mitigating circumstances in the sentencing order; and (11) rejecting Sims' challenge to the constitutionality of Florida's capital sentencing statute." Sims, 681 So.2d at 1113 n. 2.
[5] Sims filed his initial postconviction motion on April 8, 1998.
[6] Sims also alleges: (1) counsel was ineffective for failing to object to improper remarks made by the prosecutor during closing argument; (2) counsel was ineffective for failing to obtain an expert in crime scene reconstruction to either testify or assist counsel; (3) counsel was ineffective for failing to adequately investigate and prepare for the penalty phase; (4) counsel labored under a conflict of interest; (5) the trial court erred in excluding the evidentiary hearing testimony of Steven Potolsky; and (6) Sims' death sentence is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, because we find that counsel was ineffective for failing to properly challenge the canine-alert evidence, we do not address these issues.