BENTON, J.
Wendell Jermaine Hall argues that his counsel had no right to waive his presence when the state’s motion to compel him to produce hair, blood, and saliva samples was argued, and that his convictions for burglary with battery and for sexual battery should be reversed on the additional ground that a witness the state did not list was allowed to testify at trial over objection. We affirm both convictions. We agree, however, that the habitual violent felony offender sentence the trial court pronounced must be reversed for lack of qualifying predicate offenses. ' We reverse that sentence and remand for resentencing on the sexual battery conviction.
I.
When the trial court heard argument on the state’s motion to compel Mr. Hall to furnish hair, blood, and saliva samples, Mr. Hall was not in attendance. His lawyer purported to waive his right under Florida Rule of Criminal Procedure 3.180 to attend. But the right to attend “any pretrial conference,” Fla. R.Crim. P. 3.180(a)(3), is personal to the defendant and can only be waived “by the defendant in writing.” Id. It was therefore error to go forward without Mr. Hall.
We are concerned here, however, not with absence from the trial itself, cf. Jarrett v. State, 654 So.2d 973 (Fla. 1st DCA 1995), but with absence from a pretrial conference at which no evidence was put on. When the rule requiring the defendant’s attendance at pretrial conferences is violated, “it is the constitutional question of whether fundamental fairness has been thwarted which determines whether the error is reversible.” Garcia *376 v. State, 492 So.2d 360, 364 (Fla.1986). See Roberts v. State, 510 So.2d 885, 891 (Fla.1987).
The motion to compel could have been decided even without hearing argument of counsel. Nothing else was taken up at the pretrial conference Mr. Hall did not attend. Later, in proceedings in which Mr. Hall participated fully, many of the same points were gone over anew on a motion to suppress the samples. In these circumstances, we conclude that his absence when the motion to compel was argued does not require that the convictions be reversed.
II.
At trial, Lafe Highfill testified that some two years and three months before trial he had taken samples of hair, blood, and saliva from a man who identified himself as Mr. Hall when he presented himself at the Escambia County Jail. Not surprisingly after such a long time, Mr. Highfill could not remember what the man looked like well enough to say whether he was in fact Mr. Hall, then standing trial. Mr. Highfill also testified, however, that he had taken fingerprints from the man identifying himself as Mr. Hall, and kept them with the samples.
The state then called as a witness a 27-year Escambia County Sheriff Department’s employee, presumably a deputy sheriff, with long experience as a fingerprint examiner. Mr. Hall, who represented himself at trial,[1] objected that the deputy sheriff had not been listed as a witness. Before the jury heard him, he was placed under oath and testified outside the jury’s presence. After allowing cross-examination uninhibited in any way, the trial court stated that an inadvertent violation of disclosure requirements (set out in Florida Rule of Criminal Procedure 3.220) had occurred, but that “the effect of the violation has not materially affected the ability of the defendant to prepare for trial.”
The deputy sheriffs testimony before the jury paralleled his testimony on proffer in every material respect. He testified that the fingerprints Mr. Highfill had taken when he collected the samples were impressions of Mr. Hall’s right index finger. (During a trial recess, Mr. Hall’s fingerprints had been taken at the trial court’s direction for use as exemplars.)
Initially, the state argues that no discovery violation occurred because the prosecutor did not know, until after the trial had begun, that the fingerprint examiner had — and, indeed, the fingerprint examiner did not have until then — information relevant to the offenses of which Mr. Hall was accused. Florida Rule of Criminal Procedure 3.220 provides, in part:
(b) Prosecutor’s Discovery Obligation.
(1) Within 15 days after service of the Notice of Discovery, the prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, ... and photograph the following ...:
(A) a list of the names and addresses of all persons known to the prosecutor to have information that may be relevant to any offense charged or any defense thereto, or to any similar fact evidence to be presented at trial under section 90.404(2), Florida Statutes.
(Emphasis supplied.) The state’s “surprise” at a hole in its case attributable to its failure to prepare adequately cannot, however, excuse the failure to list its witnesses. To rule otherwise would seriously undermine the important purposes Florida Rule of Criminal Procedure 3.220 serves. The state is under an obligation to list every witness it calls at trial, as part of *377 reciprocal discovery under Florida Rule of Criminal Procedure 3.220.
The rule contemplates ah exchange of witness lists and requires that every witness who is to be called by either party be listed. “If a defendant elects to participate in discovery, ... the defendant shall furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial or hearing.” Fla. R.Crim. P. 3.220(d)(1). See also Committee Notes to the 1989 Amendment (“The purpose of this change is to ensure reciprocity of discovery.... Under (b)(1) the prosecutor’s obligation to furnish a witness list is conditioned upon the defendant filing a ‘Notice of Discovery.’ ”). The state must list, inter alios, every witness it expects to call at trial.
“When the state calls an unlisted witness, and the defendant asserts a violation of the discovery rule, Florida Rule of Criminal Procedure 3.220(b), ... the trial court must conduct a Richardson hearing. See Richardson [v. State], 246 So.2d [771] at 775 [ (Fla.1971) ].” Sims v. State, 681 So.2d 1112, 1114 (Fla.1996). See generally McArthur v. State, 671 So.2d 867 (Fla. 4th DCA 1996).
Richardson states that although the trial court has discretion in determining whether the state’s noncompliance with the discovery rules resulted in harm or prejudice to the defendant, such discretion could be exercised only after the court made an adequate inquiry into all of the surrounding circumstances. At a minimum the scope of this inquiry should cover such questions as whether the state’s violation was inadvertent or willful, whether the violation was trivial or substantial, and, most importantly, whether the violation affected the defendant’s ability to prepare for trial.
State v. Hall, 509 So.2d 1093, 1096 (Fla.1987). The trial court conducted an adequate Richardson hearing in the present case. It found that the violation was inadvertent rather than intentional and “that the violation was of some substance.” The DNA evidence was in fact critical. While the victim identified Mr. Hall as her assailant at trial, previously she had tentatively identified three other persons as the assailant.
'The unlisted deputy sheriffs testimony was necessary to make the DNA evidence relevant. See generally Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (holding it “reversible error to allow the Government to use against [a defendant] on the issue of guilt the testimony given by him upon his unsuccessful motion to suppress”). But the trial court found that the defendant’s ability to prepare for trial had not suffered, because the defense had not anticipated the state’s encountering difficulty in tying the samples to the defendant. “[T]he potential prejudice involved in discovery violations is the risk of surprise on the opposing party and an inability, to adequately prepare for trial.... ” Norton v. State, 709 So.2d 87, 96 (Fla.1997).
The test is “whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense.” State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995). Here, after inquiry, the trial court found that Mr. Hall prepared for trial assuming that the DNA evidence would come in, so that its admission did not require him to alter the trial strategy he had designed[2] to meet DNA evidence the deputy sheriffs testimony rendered admissible.
On appeal for the first time, he argues that he was entitled to appointment of his own fingerprint examiner and to present a defense expert’s views on whether his fingerprints were on the package in which the samples were stored. We do not reach this issue because it was not raised in the *378 trial court.[3] Asked by the trial, judge, “What would you do differently?” Mr. Hall made no mention of calling his own fingerprint examiner. With this response to its inquiry, the trial court justifiably concluded that the defense had not been procedurally prejudiced.
Where no Richardson hearing is held, a criminal defendant may be deemed “procedurally prejudiced” on theories the defense was not afforded an explicit opportunity to assert in the trial court
if there is a reasonable possibility that the defendant’s trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action must be considered: If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.
Id. at 1020-21. But here a Richardson inquiry did take place and the defense asserted no prejudice that the opportunity to cross-examine on proffer did not cure.
III.
The trial court declared Mr. Hall a habitual violent felony offender and sentenced him to life in prison for sexual battery. He argues that the sentence is illegal and should be reversed because the prior violent offenses on which it is predicated took place six weeks after the sexual battery for which he was convicted in the present case. Citing Breeze v. State, 641 So.2d 450 (Fla. 1st DCA 1994), he also argues that these offenses cannot serve as a lawful predicate for his sentence as a habitual violent felony offender because the convictions they gave rise to were on appeal at the time the habitual violent felony offender sentence was pronounced, but we need not reach this issue.
In Speights v. State, 711 So.2d 167, 169 (Fla. 1st DCA 1998), review granted, 728 So.2d 204 (Fla.1998), we declined to reverse a habitual violent offender sentence for lack of a proper predicate on grounds “that reliance on an improper predicate offense does not render the sentence ‘illegal’ for purposes of determining whether the error may be raised for the first time on appeal.” Thereafter our supreme court held that a sentence imposed in the absence of statutory authority is “illegal.” See State v. Mancino, 714 So.2d 429, 433 (Fla.1998) (“A sentence that patently fails to comport with statutory or constitutional limitations is by definition ‘illegal.’ ”).
In the wake of the Mancino decision, we have treated as fundamentally erroneous any habitual offender sentence faffing to comply with statutory requirements, and have held specifically that reliance on non-qualifying predicate “offenses constitutes fundamental error which may be addressed for the first time on [direct] appeal.” Calloway v. State, 24 Fla. L. Weekly D552, D552, 734 So.2d 1079, 1080 (Fla. 1st DCA 1999). See generally Nelson v. State, 719 So.2d 1230, 1231-1232 (Fla. 1st *379 DCA 1998). See also, e.g., Sanders v. State, 698 So.2d 377 (Fla. 1st DCA 1997). But see Torres v. State, 715 So.2d 1151 (Fla. 3d DCA 1998).
On the merits, it is clear that a habitual violent felony offender sentence predicated in part on an offense which did not occur until after the offense for which the habitual violent felony offender sentence was imposed cannot stand. See Elmer v. State, 732 So.2d 21 (Fla. 1st DCA 1999). See also Rhodes v. State, 704 So.2d 1080 (Fla. 1st DCA 1997) (reversing habitual felony offender sentence imposed for offense antedating predicate offense). The statute provides:
In order to be counted as a prior felony for purposes of sentencing under this section, the felony must have resulted in a conviction sentenced separately prior to the current offense ....
§ 775.084(5), Fla. Stat. (1995) (emphasis supplied). Mr. Hall’s sentence predicated on offenses that took place after the offense for which he was sentenced as a habitual violent felony offender “patently fails to comport with statutory ... limitations [and] is by definition illegal.” Man-cino, 714 So.2d at 433. We therefore reverse the life sentence Mr. Hall received for sexual battery as a habitual violent felony offender.
We affirm otherwise. The case is remanded for resentencing on the sexual battery conviction.
ERVIN and BOOTH, JJ., CONCUR.

. The trial court wisely appointed standby counsel, after Mr. Hall elected to represent himself. See Visage v. State, 664 So.2d 1101, 1104 (Fla. 1st DCA 1995) (Benton, J., dissenting) ("As a practical matter, appointing standby counsel for a pro se defendant intent on representing himself has much to commend it.”). At sentencing, Mr. Hall was represented by counsel.

. The transcript reflects that the defense had prepared to cross-examine vigorously as to the reliability of DNA identification techniques.

. The defendant's objection was that letting the deputy sheriff testify would result in his being “prejudiced,” then:
"This — this—this—this is not right, Your Honor. He should not be allowed to come in here and give testimony. I would like to get depositions. If I had known that he was going to come in, I would have get (sic) depositions. I didn't know. Today is — "
Asked by the trial judge, "What would you do differently?” the defense made no mention of calling its own fingerprint examiner. Mr. Hall did not specifically request a continuance and did not explain why deposing the deputy sheriff would be more helpful than examining him on sworn proffer. He made no motion for mistrial. See Fla. R.Crim. P. 3.220(n).