THOMAS, Judge.
On February 9, 2011, Ensley Seafood Five Points, LLC (“Ensley Seafood”), filed a complaint seeking declaratory relief in the Jefferson Circuit Court against the City of Birmingham (“the City”). Ensley Seafood claimed that the decision of the Birmingham City Council (“the city council”) denying its application for a license to sell beer and wine for off-premises consumption (“the license”) was arbitrary or capricious and had violated its rights under the Equal Protection Clause of the United States Constitution.[1] Ensley Seafood claimed that the city council had erred in determining that its approval of the license would violate Ala.Code 1975, § 28-l-6(a)(l), which governs the issuance of licenses for the sale of intoxicating beverages, and had violated Ensley’s Seafood’s constitutional rights by denying the license. The City answered the complaint, asserting various defenses. The circuit court held an ore tenus hearing on June 9, 2011. On August 1, 2011, the circuit court issued its judgment determining that the city council’s decision to deny the license was not arbitrary or capricious and that the city council’s decision had not violated the Equal Protection Clause of the United States Constitution. Ensley Seafood filed a motion to alter, amend, or vacate the judgment or for a new trial; that motion was denied on November 21, 2011. On December 27, 2011, Ensley Seafood timely filed its notice of appeal with this court, seeking our review as to whether the circuit court’s judgment was arbitrary or capricious and whether the judgment violated Ensley Seafood’s right to equal protection of the laws.

Standard of Review

“In City of Mobile v. Simpsiridis, 738 So.2d 378 (Ala.1999), our supreme court *1151 set out the applicable standard of review.
“ ‘The trial court’s findings of fact are presumed to be correct when they are based on ore tenus evidence. Because § 28-l-6[, Ala.Code 1975,] provides for de novo review in the circuit court from the disapproval of an application for a license to sell alcohol, the usual presumption in favor of the findings by the city or administrative agency is not applicable here.... In the case of an appeal to the circuit court, the statute requires a circuit judge to hear the evidence de novo, i.e., without any presumption in favor of the municipality....
“ ‘On appeal from the order of the circuit court, we are required to indulge every presumption in favor of the trial court’s findings of fact. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala.1987); McCrary v. Butler, 540 So.2d 736 (Ala.1989). The trial court’s judgment in such a case will be affirmed if, “under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” Jones v. Jones, 470 So.2d 1207, 1208 (Ala.1985). Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala.1989).’
“733 So.2d at 381-82.”
Biggs v. City of Birmingham, 91 So.3d 708, 711 (Ala.Civ.App.2012).
As a threshold issue, we first briefly address Ensley Seafood’s argument that the circuit court erred by placing the burden on Ensley Seafood to show there was no reasonable justification supporting the city council’s decision to deny the license. We conclude that the circuit court did not err.
“The legislature has vested in the [decision-making body] the power to issue licenses permitting the sale of alcoholic beverages; however, the legislature has limited the [decision-making body]’s power to issue a license to permit the sale of alcohol on premises located within municipalities. Ala.Code 1975, § 28-3A-11. A municipality has the ‘broad’ discretion to approve or disapprove the issuance of liquor licenses with respect to locations within the municipality. See § 28-3A-11, Ala.Code 1975; Ott v. Everett, 420 So.2d 258, 260 (Ala.1982). However, .the decision of the municipality in denying an application for a liquor license is subject to judicial review and is reversible if it is shown that the municipality acted arbitrarily in denying the application for a liquor license. See Black v. Pike County Comm’n, 375 So.2d 255 (Ala.1979); Inn of Oxford, Inc. v. City of Oxford, 366 So.2d 690 (Ala.1978); see also Hamilton v. Town of Vincent, 468 So.2d 145, 147 (Ala.1985) (affirming trial court’s judgment after finding that the liquor-license applicant had failed to carry burden of showing arbitrary and capricious action by licensing authority).”
Phillips v. City of Citronelle, 961 So.2d 827, 829 (Ala.Civ.App.2007).
Son Tran and his wife are the owners of Ensley Seafood. Tran applied for the license while Ensley Seafood’s facility was under construction. Tran’s former business was also called Ensley Seafood (“the former Ensley Seafood”) and had been a take-out seafood restaurant. In 2009, Tran had the former Ensley Seafood restaurant completely demolished. New construction began in the same location on what was to become Ensley Seafood’s facility — a combination take-out seafood restaurant, gas station, and convenience store. Ensley Seafood desired to sell beer and wine for off-premises consumption in the newly constructed convenience-store portion of the Ensley Seafood facility.
*1152 In November 2010, members of the Ens-ley Highlands Neighborhood Association (“the EHNA members”) met. According to the minutes of that meeting, the EHNA members voted 16 to 1 to oppose Ensley Seafood’s application for the license. In January 2011, Tran opened the Ensley Seafood facility. On February 1, 2011, the city council held its regular public meeting; Ensley Seafood’s license application was discussed and unanimously rejected.
At the city council’s meeting, Tran and Chuck Arthur, an accountant, spoke in favor of granting the license to Ensley Seafood. Arthur said that the business had made a large investment when it rebuilt. Sales of beer and wine were one way to “recapture” the investment, he explained.
Dr. Derrick E. Houston, the pastor of the church that is located next door to Ensley Seafood’s facility, Councilman Steven Hoyt, and Detective Ralph Patterson spoke in opposition to granting the license to Ensley Seafood. The city council heard general comments in opposition to granting the license tending to show that granting the license (1) could create a nuisance; (2) could create circumstances detrimental to the neighborhood that would adversely affect the public health, safety, and welfare of the adjacent residential neighborhood; (3) could violate applicable zoning restrictions because of the close proximity of the Ensley Seafood facility to two or more child-care facilities; and (4) could create traffic congestion. Detective Patterson reported that more than 20 police reports had resulted from incidents at the former Ensley Seafood restaurant between December 2007 and November 2010. Furthermore, the city council itself noted that, before the rebuilding project was undertaken, Tran had not been a “good steward”; it stated that the former Ensley Seafood restaurant had been an “eyesore” and that there had been a history of inadequate exterior upkeep.
At the circuit court’s de novo hearing on June 9, 2011, the circuit court properly considered the video recording and the transcript of the city-council meeting and the testimony of several witnesses.[2] Tran testified that other businesses in the area are licensed to sell beer and wine for off-premises consumption and are licensed to sell beer and wine for on-premises consumption. He disputed Detective Patterson’s statement that more than 20 police reports had been filed listing the address of the former Ensley Seafood restaurant, and he said that if some incidents had occurred, the incidents were not his responsibility. Although he did not specify whether he referred to the former Ensley Seafood or to Ensley Seafood, Tran disputed the city council’s statement that he had not been a good steward; he said that he had kept the premises clean. He offered photographs of the exterior and interior of the Ensley Seafood facility, in its newly constructed condition, intended to convince the circuit court of its cleanliness.
Councilman Hoyt, whose district includes the neighborhood in which the Ens-ley Seafood facility is located, admitted that there were at least four other businesses within close physical proximity to Ensley Seafood’s facility that had licenses to sell beer and wine for off-premises consumption. However, he testified that, in his opinion, Ensley Seafood was unlike the other businesses. He said that Ensley *1153 Seafood’s facility is located next door to a church and in close proximity to “several” day-care centers and an apartment complex. He described the road leading to the Ensley Seafood facility as a “busy thoroughfare,” and he said that the former Ensley Seafood restaurant had been “blighted” for “three or four years” before Tran demolished and rebuilt the Ensley Seafood facility.
Dr. Houston testified that he was the pastor of Warriors International Fellowship (“the church”), which is located directly next to the Ensley Seafood facility. He said the church offered a free day-care service to its 500 members 7 days per week. He stated that the church’s members are generally “below average income” earners and that the church “targets” individuals who are in need of substance-abuse and addiction programs. When asked whether he had witnessed criminal activity at the former Ensley Seafood restaurant, he said: “I’ve seen drugs sold [in the parking lot].” He said that he had “often” paid to have the area around the former Ensley Seafood restaurant cleaned and to have the grass on its lot cut.
Theresa Barnes is the city zoning inspector and personal liaison to the city council’s public-safety committee for zoning issues pertaining to liquor licenses. She testified on behalf of the City. She said that there were two day-care centers located near the Ensley Seafood facility in addition to the one apparently operated by the church.
Detective Patterson testified that he had appeared before the city council in his capacity as an investigator of Ensley Seafood’s license application. He said that there were 26 “criminal incidents” at the former Ensley Seafood restaurant between December 2007 and November 2010. Under cross-examination, he admitted that some of those criminal incidents could have occurred near the Ensley Seafood restaurant — e.g., an incident of domestic violence could have occurred in the apartment complex behind the restaurant and an individual telephoning the police could have indicated Ensley Seafood as a landmark instead of giving the address of the apartment complex. He conceded that the incidents had occurred before the demolition of the former Ensley Seafood restaurant and during the construction period.
Ensley Seafood argues that the circuit court’s judgment is due to be reversed because, it says, the city council’s arbitrary and capricious denial of the license violated its constitutional right to equal protection of the laws. It asserts that “four institutions which are similarly situated to Ensley Seafood were granted off-premises beer and wine licenses by the [c]ity [c]ouncil.”
“The Fourteenth Amendment provides that ‘[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws.’ The United States Supreme Court has addressed the constraints placed on the judiciary in reviewing an equal-protection challenge of this nature. In Plyler v. Doe, 457 U.S. 202, 216,102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the Court stated:
“‘The Equal Protection Clause directs that “all persons similarly circumstanced shall be treated alike.” F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 [40 S.Ct. 560, 64 L.Ed. 989] (1920). But so too, “[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.” Tigner v. Texas, 310 U.S. 141, 147 [60 S.Ct. 879, 84 L.Ed. 1124] (1940). The initial discretion to determine what is “different” and what is “the same” resides in the legislatures of the States. A legislature *1154 must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.’ ”
Jefferson Cnty. v. Richards, 805 So.2d 690, 698 (Ala.2001).
The city council was aware that four businesses within close proximity to the Ensley Seafood facility had licenses to sell beer and wine for off-premises consumption — a Winn-Dixie grocery store, a Kangaroo convenience store, a Rite Aid pharmacy, and a CVS pharmacy (collectively referred to as “the four licensed businesses”). In addition, the city council was aware that an Applebee’s restaurant, located across the street from the Ensley Seafood facility, had a license to sell alcoholic beverages for on-premises consumption. It is apparent from the comments made by council members that the city council was aware that the existence of the four licensed businesses might present “a problem with equal protection,” yet the city council offered only a one-sentence explanation of the difference between the Ens-ley Seafood facility and the Applebee’s restaurant, saying that Ensley Seafood had applied for a license to sell beer and wine for off-premises consumption and Apple-bee’s license was for on-premises consumption. The city council did not attempt to differentiate the four licensed businesses from Ensley Seafood. Instead, the city council used the majority of the discussion to hear and make comments concerning the grounds for disapproving a liquor license set out in Ala.Code 1975, § 28 — 1—6(a) (1 )b. It stated more than once that it appreciated and welcomed Ensley Seafood’s restaurant business in the district but that it did not favor the idea of Ensley Seafood’s having the ability to sell beer or wine in its attached convenience store.
The circuit court heard confirming testimony from Councilman Hoyt indicating that the four licensed businesses have licenses to sell beer and wine for off-premises consumption and that no business at the Ensley Seafood location had ever had a license to sell beer and wine for off-premises consumption. He testified that Ens-ley Seafood is unlike the four licensed businesses because the four licensed businesses had acquired their licenses before Ensley Seafood applied for its license and because none of the other businesses are directly next door to the church, although he admitted that the CVS pharmacy across the street from the church is physically closer to the church than is Ensley Seafood’s facility.
Ensley Seafood relies on Swann v. City of Graysville, 367 So.2d 952 (Ala.1979), and Bratton v. City of Florence, 688 So.2d 233 (Ala.1996), in its brief to this court. In Bratton our supreme court analyzed the question whether a violation of equal protection had occurred. Bratton, 688 So.2d at 234. In that case, the planning commission for the City of Florence feared that the Brattons’ proposed seven-unit apartment complex would create traffic congestion; the city’s planning commission denied the Brattons’ application for a building permit. Id. At the same time, the city’s planning commission granted another applicant’s application for a building permit for a “20- to 30-unit apartment complex” on the same street. Id. The circuit court entered a summary judgment in favor of the City of Florence. Id. Our *1155 supreme court, agreeing with the Brattons that the issue of arbitrary and capricious treatment was implicated, reversed the judgment and remanded the cause to require the planning commission to offer evidence of an “articulable basis for the disparate treatment” so as to entitle it to a summary judgment in its favor. Id. at 235.
In Swann, our supreme court determined that Virginia Swann was denied equal protection of the laws when her application for a license to sell alcohol was denied. Swann, 367 So.2d at 953. While Swann’s application was pending, the City of Graysville enacted an ordinance restricting sales of beer or wine within close proximity of churches and schools. Id. Swann and three licensed purveyors of beer and wine were located within the prohibited distance from a church. Id. The licenses of the three licensed purveyors were renewed after the adoption of the ordinance; Swann’s application was denied. Id. The City of Graysville contended that Swann was unlike the three licensed purveyors because she had not been licensed to sell alcohol before the ordinance was adopted and the three licensed purveyors had been licensed to sell alcohol before the ordinance was adopted. Id. The City of Graysville said that the three licensed purveyors were entitled to have their licenses renewed even though they, like Swann, were located close to a church. Id. Our supreme court reversed the judgment and remanded the cause, stating that it was “evident from the record that ... Swann was refused a license on the basis that the proposed location of her business lay within the distance from a church prohibited by the ordinance” despite the fact that similar businesses had had their licences renewed in violation of her right to equal protection of the laws. Id. It said that Swann’s equal-protection rights had been violated due to the City of Graysville’s “mistaken belief’ that Swann was dissimilar to the three licensed purveyors. Id. at 954. The City of Graysville had mistakenly believed that, even after the new ordinance had been enacted, it was required to renew the three licensed purveyors’ licenses and that Swann was not similar to the three licensed purveyors because her application was a new application instead of a renewal application. The court held that the City of Graysville was not required to renew the three licensed purveyors’ licenses; therefore, Swann and the three licensed purveyors were similarly situated businesses and the denial of Swann’s application was an arbitrary and discriminatory exercise of the City of Graysville’s power. Id.
Like the contention made by the City of Graysville in Swann, the city council contended that Ensley Seafood was not similarly situated to the four licensed businesses or to the Applebee’s restaurant. The circuit court agreed with the city council. The circuit court’s judgment reads in pertinent part:
“Applebee’s is not similar in that it does not sell alcoholic beverages [for] off-premises [consumption], Winn Dixie and Rite Aid are dissimilar to Ensley Seafood in the nature of their business. Kangaroo convenience is most similar to Ensley Seafood. However, other [than] being close to Ensley Seafood, [Ensley Seafood] failed to show that Kangaroo convenience store is similarly situated. More specifically, [Ensley Seafood] has not shown that the Kangaroo convenience store is in the same proximity to residential apartments and daycares as is Ensley Seafood, that its owner has a history of not being a good steward of the neighborhood, that it has like crime history as Ensley Seafood, or that the traffic is as congested at Kangaroo con *1156 venience store as it is at Ensley Seafood’s location.”[3] *1157 exercise of discretion by the Board. To say that a license must be granted to a particular licensee within a certain number of feet of a school, [church], or other eleemosynary institution because there are other licensees in the same town, or another town, in a ‘near proximity,’ i.e., certain number of feet, of such institution, thwarts the discretion of the ABC Board. Furthermore, and foremost, such a ruling would require this court to review every license application filed with the ABC Board, approximately 12,-000 according to the testimony in this case.
*1156 A circuit court may set aside the denial of a license if a municipality’s approval was arbitrarily or capriciously •withheld; however, Ensley Seafood failed to persuade the circuit court that the city council’s denial, in this case, was arbitrary or capricious. We are constrained by our standard of review to presume that the circuit court’s factual findings are correct. We have reviewed the record to discern whether credible evidence supports the circuit court’s judgment in this case. We might have determined that the circuit court lacked substantial evidence demonstrating that the denial of Ensley Seafood’s application was an arbitrary or capricious misuse of the city council’s licencing power and that Ensley Seafood’s right to equal protection was violated if the circuit court had not based its judgment, in part, upon its determination that Ensley Seafood, unlike the four licensed businesses, has a history of bad stewardship, of crime at its address, and of congested traffic.
In Mims v. Russell Petroleum Corp., 473 So.2d 507 (Ala.Civ.App.1985), this court was asked to consider whether a decision-making body’s denial of a license had denied the applicant equal protection of the laws. Mims, 473 So.2d at 508. In Mims, the Alcoholic Beverage Control Board (“the ABC Board”) had denied an off-premises beer-license application to the Russell Corporation, d/b/a/ Kwik Shop (“the corporation”), due to the ABC Board’s concerns over the proposed location of the corporation’s new convenience store, which was to be located in an area frequented by small children. Id. The Montgomery Circuit Court granted a writ of certiorari and ordered the ABC Board to grant a license to the corporation because, the trial court said, the denial of the application was arbitrary. Id. In its judgment, the trial court stated that there existed no rational basis for the denial of the application “because other licensees in Tallassee were ‘near churches, schools and busy shopping areas,’ and because other licensees in Mobile, Jefferson, and other counties were in a ‘near proximity to schools, churches and heavily traveled business districts.’ ” Id. Thus, the trial court’s judgment compelled the ABC Board to grant an off-premises beer license to the corporation. Id. at 507.
The ABC Board appealed to this court. We reversed the judgment and remanded the cause, saying that the ABC Board had not arbitrarily denied the corporation’s application for an off-premises beer license and, therefore, had not violated the corporation’s right to equal protection of the laws. Id. at 509. We said that
“[t]he facts of this case, arising in a small rural town, are clearly different from cases relied upon by the Russell Corporation. Each case depends upon its own facts. The distinctions of place and location, small they may be, are the basis for the exercise of the discretion of the board. See Broughton [v. Alabama Alcoholic Beverage Control Bd.], 348 So.2d [1059,] 1060 [ (Ala.Civ.App.1977) ]; see also 45 Am.Jur.2d Intoxicating Liquors, § 138 (1969).
‘We cannot, therefore, say that the Russell Corporation was denied equal protection of the laws by an arbitrary
*1157 “Community standards, i.e., opposition to the location of retailers of intoxicants, also have a bearing on each case. Cf. Broughton, 348 So.2d at 1060. There is evidence in the present case that the mayor, city council, school board, other community leaders, and citizens are strongly opposed to this particular location, but would welcome the Russell Corporation’s business ‘in any location but in this location here....’”

Id.

In City of Hueytown v. Jiffy Chek Co. of Alabama, 342 So.2d 761 (Ala.1977), our supreme court considered the question whether a decision-making body’s denial of a liquor license had denied the applicant equal protection of the laws. In Huey-town, the court affirmed the trial court’s judgment that Jiffy Chek had been denied equal protection of the laws because
“[t]he uncontradicted evidence show[ed that] Jiffy Chek [wa]s situated no differently than the other merchants who were issued table wine licenses by the City. In respect to Tit. 29, § 73, all these merchants are located in the prohibited area, yet only Jiffy Chek ha[d] been denied a license.”[4]
Hueytown, 342 So.2d at 762.
The court, noting that three other businesses within one mile of schools and charitable organizations had licenses to sell alcoholic beverages, explained:
“Sections 1, 6, and 22 of the Alabama Constitution combine to guarantee equal protection of the laws. The essence of the theory of equal protection of the laws is that all similarly situated be treated alike. An individual cannot be subjected to [arbitrary] exercise of governmental powers. Vernon v. State, 245 Ala. 633,18 So.2d 388 (1944).”

Id.

We determine that the resolution of this appeal depends upon whether the evidence before the circuit court indicates that Ens-ley Seafood is similarly situated to other businesses that have been granted licenses to sell beer and wine for off-premises consumption, rendering the city council’s denial of Ensley Seafood’s application an arbitrary exercise of governmental powers.
Alabama Code 1975, § 28-1-6, governs the “[issuance of licenses for the sale of intoxicating beverages in Class 1 or Class 2 municipalities.” The circuit court determined that the city council had before it evidence of several of the factors set out in § 28-l-6(a)(l)b., which we quote:
“(a)(1) All other provisions of law, rules, or regulations to the contrary notwithstanding, the Alabama Alcoholic Beverage Control Board shall absolutely have no authority to issue any form of license in a Class 1 municipality, including, but not limited to, off-premises consumption licenses, restaurant licenses, or club licenses, for the retail sale of any form of intoxicating beverages, including, but *1158 not limited to, malt liquor, beer, wine, liquor, or other alcoholic beverage regulated by the board, unless one of the following requirements is satisfied:
[[Image here]]
“b. The denial of approval by the Class 1 governing body has been set aside by order of the circuit court of the county in which the site is situated on the ground that the municipal approval was arbitrarily or capriciously denied without a showing of one of the following:
“1. The creation of a nuisance.
“2. Circumstances clearly detrimental to or which would adversely affect the public health, safety, and welfare of the adjacent residential neighborhoods.
“3. A violation of applicable zoning restrictions or regulations.
“4. An individual applying for the license has a prior conviction involving the use of alcohol or a controlled substance.
“5. The proximity of the business to a school or child care facility and the business hours of the operation will create a harmful environment for the children.
“6. The traffic congestion created by licensing the proposed location will endanger others.
“7. Any other reason that poses a risk.”
The city council heard comments in opposition to granting the license that could have supported a finding that several of the seven factors listed in § 28 — 1—6(a)(l)b. existed, and the circuit court’s judgment contained the findings that Ensley Seafood had a history of bad stewardship, of crime at its address, and of congested traffic. Clearly, no one alleged that Tran had a prior conviction involving the use of alcohol or a controlled substance. However, there were allegations that granting the license to Ensley Seafood could create a nuisance; could create circumstances detrimental to the neighborhood that would adversely affect the public health, safety, and welfare of the adjacent residential neighborhood; could be harmful to children because of the close proximity to child-care facilities; and could create traffic congestion. The city council was also aware that the EHNA members opposed granting the license.
We have indulged every presumption in favor of the circuit court’s judgment and we affirm that judgment because we conclude that there exists an articulable basis for the allegedly disparate treatment of Ensley Seafood. Therefore, we determine that the denial of Ensley Seafood’s application for a license was not an arbitrary and capricious exercise of governmental powers; we perceive some credible evidence indicating that the city council properly exercised its discretion to deny Ensley Seafood’s application for the license.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. Alabama Code 1975, § 28-1-6, governs the "[i]ssuance of licenses for sale of intoxicating beverages in Class 1 or Class 2 municipalities.” The City is a Class 1 municipality pursuant to Ala. Code 1975, § 11-40-12(a), which defines Class 1 municipalities as "[a]ll cities with a population of 300,000 inhabitants or more.” Section 28 — 1—6(a)(l)a. requires approval of applications by the "governing body of the Class 1 municipality in which the site of the license is situated.” In this case, the governing body was the city council.

. ‘‘[Alabama Code 1975, 28 — 1—6(b),] requires the trial judge reviewing the municipality’s denial of a license [to sell intoxicating beverages] to consider all the evidence before the municipality and any new evidence that may be offered at the de novo hearing in the circuit court. § 28 — 1—6(b)." City of Mobile v. Simpsiridis, 733 So.2d 378, 381 (Ala.1999).

. We note that the circuit court’s findings failed to reference the CVS pharmacy, which is physically closer to the church than is the Ensley Seafood facility. We presume that the circuit court would determine that a Rite Aid pharmacy and a CVS pharmacy are in the same business and, according to its reasoning, that the CVS pharmacy is therefore not similarly situated to Ensley Seafood.

. At that time, Title 29, § 73, Ala.Code 1940 (Recomp.1958), governed procedures for granting and denying licenses to sell alcoholic beverages.